LAW LIBRARY

NO. 30091

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF M CHILDREN:   TM, JM, AM

K. HAMAKADO
CLERK, APPELLATE COURTS
STATE OF HAWAI'I

2010 MAY -4 AM 11:03

FILED

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 07-11388)


SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding J., Fujise and Leonard, JJ.)

Father and Mother (collectively, Parents) each appeal from the Order Awarding Permanent Custody (Order Awarding Custody) of TM, JM, and AM (collectively, the M Children) to the Department of Human Services (DHS), filed on September 15, 2009 in the Family Court of the First Circuit (family court).[1]

On appeal, Father contends (1) the family court erred in finding that Father was a perpetrator of harm to the M Children; (2) the family court erred in finding that Father had not participated in or benefitted from the recommended services and was therefore unable to provide a safe family home; (3) the family court erred in finding that adoption by the Foster Parents[2] was in the best interests of the M Children; (4) the family court erred in qualifying Annibelle Togle-Wilson (Togle-Wilson) as an expert in social work; and (5) without Togle-Wilson's expert testimony, there was insufficient evidence to support the termination of parental rights.

On appeal, Mother contends (1) she participated in recommended services, (2) DHS failed to make reasonable efforts to reunify her with the M Children, and (3) the family court's determination that adoption by Foster Parents was in the best

---

[1]  The Honorable Christine E. Kuriyama presided.

[2]  At the time of trial, the M Children were living with their paternal aunt and uncle, who had become their Foster Parents.

interests of the M Children was not supported by clear and convincing evidence.

The determinations of the family court relating to whether a child's parent is, or will become in the foreseeable future, willing and able to provide a safe family home for the child are reviewed on appeal for clear error. In re Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001); see In re Doe, 103 Hawai'i 130, 135, 80 P.3d 20, 25 (App. 2003).

The determination of witness credibility is left to the family court. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (internal quotation marks and citation omitted).

"[T]he family court's determination of what is or is not in a child's best interest[] is reviewed on appeal for clear error." In re Doe, 95 Hawai'i at 190, 20 P.3d at 623.

A court's decision to qualify an expert witness is reviewed for an abuse of discretion. In re Water Use Permit Applications, 94 Hawai'i 97, 183, 9 P.3d 409, 495 (2000); see also State v. Fukagawa, 100 Hawai'i 498, 503-04, 60 P.3d 899, 904-05 (2002).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we do not agree with Mother or Father's contentions.

On May 16, 2007, DHS filed a "Petition for Temporary Foster Custody and Foster Custody (Upon Location)" for the M Children and PM,[3] their older sibling. DHS became involved with the M Children because of severe emotional and psychological issues of the M Children and PM resulting from abuse and neglect.

---

[3] The family court's jurisdiction over PM terminated on June 24, 2008, prior to the start of trial, because PM "aged out of jurisdiction."

2

Instances of abuse included the older children not being fed regularly and the younger children being forced to wear diapers even though they had been toilet trained. The M Children were made to use toilets outside the house. TM had to defecate into a plastic bag at night. Father and the M Children were made to sleep at a bus stop. Mother called the M Children "dirty" and slapped and pinched them. Parents failed to take the M Children to the dentist, resulting in dental problems for the M Children.

On December 19, 2008, DHS filed a Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan. Trial was held over four days in August and September 2009.

Dr. Loomis, a clinical psychologist, testified at trial that he diagnosed Mother as having an obsessive-compulsive disorder, adjustment disorder with a depressed mood, and a "very limited ability to understand her children's needs." Father was diagnosed as having a personality disorder "not otherwise specified with dependent features." Father's coping mechanism was repression, denial, and evasiveness, and he had little understanding of what his children were going through. Father had only a limited ability to acknowledge problems in the family and seek help.

After examining the M Children, Dr. Loomis made the following diagnoses: PM suffered from an adjustment disorder, TM suffered from an adjustment disorder with a depressed mood and possible psychotic disorder, AM had a cognitive disorder, and JM had an adjustment disorder with mixed anxiety and depressed mood. Dr. Loomis testified that each of the children required follow-up care and therapy and the care provider for the M Children would need to have insight into their needs and be able to get the necessary help.

Mother denied the allegations of abuse and neglect. Father denied some of the allegations and attempted to minimize or explain others. Parents did not fully cooperate in recommended services and opposed the outreach program in their

home. Parents had to be referred three times to outreach services because of poor participation. Parents had to be reminded during outreach and visitations that it was inappropriate for them to talk about foster home issues in front of the M Children. Parents had not completed individual therapy and marital counseling. Counseling was terminated because of Parents' poor attendance. Togle-Wilson, the DHS case manager[4] assigned to the M Children, was unable to estimate how long it would take for Parents to complete the therapy services required by the service plan.

Although Parents completed parenting classes, they used the class time to talk about the Foster Parents. Catherine Sox (Sox), the Program Director of Catholic Charities Comprehensive Services, testified at trial that she did not believe that Parents were capable of appropriate parenting for the M Children in spite of having completed the parenting class.

The M Children have done well with the Foster Parents and Foster Parents are addressing the needs of the M Children. Togle-Wilson testified that "[t]he foster home is safe and nurturing towards [the M] children." The goal of the permanent plan is adoption of the M Children, which Togle-Wilson testified was in the best interests of the M Children.

On September 15, 2009, the family court entered the Order Awarding Custody. The family court entered its Findings of Fact and Conclusions of Law on November 5, 2009.

Father's complicity in Mother's mistreatment of the M Children went beyond mere failure to protect, and the family court did not clearly err in identifying Father as a perpetrator of harm. The failure of Parents to pay attention to PM and TM during visitation, Parents' failure to clean the house prior to

---

[4] Togle-Wilson testified that her correct job title was Human Service Professional, but she called herself a case manager, and she performed the same work as the social workers in the DHS. Over Parents' objection, the family court qualified Togle-Wilson as an expert in the social work of Child Welfare or Child Protective Services.

outreach sessions, and the failure of either Mother or Father to take the M Children to a dentist were not problems caused by Mother alone. The family court's determination was also supported by the testimony of Dr. Susan Cohen, a licensed psychologist and TM's therapist, who testified that "I believe that it's abuse when it's not -- when a parent is not being protective of their child. So if Father is in the home and these things are happening, if he's not being protective of the child, I believe that that's a level of abuse."

The testimony of a single witness may be sufficient to support a finding of the family court. In re "A" Children, 119 Hawai'i 28, 43, 193 P.3d 1228, 1243 (App. 2008) (quoting In re Doe, 95 Hawai'i at 196, 20 P.3d at 629).

Parents' attendance at all of the parenting classes and their partial participation in other services does not render the family court's finding that Parents failed to meaningfully participate in services clearly erroneous. There was substantial evidence that Parents failed to participate in some services and even when they attended services, they did not always participate in a meaningful way.

DHS's efforts to effectuate reunification of the family were reasonable. The failure of recommended services to achieve reunification appears to have been due to Mother's refusal to meaningfully participate in said services and to acknowledge problems rather than any failure by DHS. Dr. Jerry Brennan, a clinical psychologist and therapist who treated Parents, testified that Mother tended to minimize problems. Mother missed several sessions and cancelled several other sessions. One of the issues Dr. Brennan addressed with Mother was that the house was a mess, and Parents agreed that it needed to be cleaned up. Dr. Brennan testified that he talked to Parents repeatedly about cleaning up the house and although Mother did clean sometimes, she could not part with anything. Togle-Wilson testified that

after approximately two years, neither Mother nor Father had completed the required services.

If Mother required other or additional services, Mother bore some responsibility in the process. There is no evidence that she made a timely request for such services. See In re Doe, 100 Hawai'i 335, 344, 60 P.3d 285, 294 (2002) ("Manifestly, a claim for additional services and accommodations must be timely made.").

It was not an abuse of discretion for the family court to treat Togle-Wilson as a social worker where the evidence established that the work she did was that of a social worker, she was hired by DHS as a social worker, and DHS treated her as a social worker. Togle-Wilson testified that she graduated from Seattle University with a Bachelor of Arts in Sociology and her education track was in social work. She was hired by DHS to be a "Case Manager Social Worker." She testified that the work she performed at DHS was social work. Her title at DHS was Human Services Professional, but she was considered to be a social worker.

The fact that Togle-Wilson did not have a Hawai'i social worker license is not dispositive. HRS § 467E-6(2) (Supp. 2009) exempts state employees from the licensing requirement.

> §467E-6 Exemptions. Licensure shall not be required of:
>
> . . . .
>
> (2)  Any person employed by a federal, state, or county government agency in a social worker position, but only at those times when that person is carrying out the duties and responsibilities as a social worker in governmental employment[.]

In the absence of a requirement that Togle-Wilson be licensed, it was not an abuse of discretion for the family court to qualify Togle-Wilson in the area of social work pursuant to HRS § 587-40(e) (2006 Repl.) ("A person employed by [DHS] as a social worker in the area of child protective or child welfare services

6

is qualified to testify as an expert in the area of social work and child protective or child welfare services.").

There was substantial evidence that Parents failed to address the issues that endangered the M Children, and therefore the family court's ultimate determination was not clearly erroneous. Several witnesses testified that Parents were not capable of providing the M Children with a safe family home and there was substantial evidence that neither Mother nor Father was capable of providing the M Children with the level of care they required.

Beverly Nakamoto (Nakamoto), a DHS social worker supervisor, testified that neither Mother nor Father was presently willing and able to provide a safe family home even with the assistance of a service plan. Sox testified that she did not believe Parents were capable of appropriately parenting the M children. Choy-Gibson testified that the care giver for AM would have to be "warm, nurturing, predictable, consistent" and understand AM's issues. Cynthia Comer[5] (Comer) testified that TM needed stability, consistency and structure from a care giver who also understood TM's need for continued therapy. Comer also testified that TM had not been consistently receiving food, supervision, or love from Parents.

The evidence showed that Parents continually deny that there was a problem. Dr. Loomis testified that Father had little understanding of what his children were going through. Nakamoto testified that neither Mother nor Father had any insight into the problems of the M Children. The problems that necessitated temporary custody had not been resolved by either Mother or Father at the time of trial.

In In re Doe, 95 Hawai'i at 197, 20 P.3d at 630, the Hawai'i Supreme Court held that

---

[5] Comer testified that she holds a masters in child and family therapy and was helping TM "adjust in academics, social, community and home setting."

Mother's vacillating compliance with service plans relating to [Doe], as well as her history of poor compliance with the service plans ordered in family court proceedings regarding her other children, amply supported the family court's conclusion that her inability to provide a safe family home for [Doe] would not improve with the assistance of a service plan.

In the instant case, Parents' inability to complete recommended services within two years supported the family court's conclusion that even the assistance of a service plan would not make Parents capable of providing a safe family home.

Mother and Father appear to object to adoption of the M Children by the Foster Parents. However, the permanent plan approved by the family court only refers to "adoption to appropriate caregivers." In light of the testimony by Comer of TM's need for consistency and the testimony of Choy-Gibson of AM's need for consistency, the determination that adoption was an appropriate goal was not clearly erroneous. The family court's determination was also supported by Togle-Wilson's testimony that adoption was in the best interests of the M Children.

Therefore,

IT IS HEREBY ORDERED that the Order Awarding Permanent Custody filed on September 15, 2009 in the Family Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, May 4, 2010.

On the briefs:

Tae W. Kim
for Mother-Appellant.

Herbert Y. Hamada
for Father-Apellant.

Mary Ann Magnier,
Deputy Attorney General,
Rebecca A. Copeland,
Deputy Solicitor General,
for Petitioner-Appellee
Department of Human Services.

Presiding Judge

Associate Judge

Associate Judge